UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JASON JAMES CLAPPER,

                Petitioner,

       -against-                                         9:15-cv-1368 (LEK)

STEVEN LANGFORD,

                Respondent.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Petitioner Jason James Clapper ("Petitioner") filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he seeks prior custody credit for the period from September 8, 2011 to October 18, 2012. Dkt. Nos. 1 ("Petition"); 1-1 ("Exhibits").[1] Respondent opposes the Petition. Dkt. No. 5 ("Response"). On February 11, 2016, Petitioner filed a Reply. Dkt. No. 7 ("Reply"). For the reasons that follow, the Petition is denied and dismissed.

**II.    BACKGROUND**

On April 23, 2009, Petitioner was arrested by members of the Lancaster, Pennsylvania Police Department for burglary, conspiracy, aggravated assault, and possession of an instrument of crime. Dkt. Nos. 5-1 ("Alan Ray Declaration") ¶ 5; 5-2 ("Lancaster County Criminal Docket"). Petitioner posted bail and on July 19, 2010, he pleaded guilty to burglary, criminal conspiracy, and aggravated assault. Lancaster Cnty. Crim. Dkt. at 4-5. He was taken into state custody on October 13, 2010. Ray Decl. ¶ 6. On October 20, 2010, Petitioner was sentenced to an aggregate term of

---

[1] The cited page numbers for the Exhibits refer to those generated by the Court's electronic filing system ("ECF").

fifteen months to five years in state prison. Dkt. No. 5-4 ("Sentence Status Summary") at 2-3.

On September 8, 2011, while Petitioner was serving his state sentence, he was temporarily taken into federal custody by the United States Marshals Service pursuant to a federal writ of habeas corpus ad prosequendum. Ray Decl. ¶ 7; Dkt. No. 5-5 ("USM-129 Detention Report") at 3.

On October 19, 2012, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to serve an aggregate term of 108 months in prison and three years supervised release following his conviction for conspiracy to steal firearms from a federal firearms licensee and sell and deal in stolen firearms without a licence and other, related charges. Pet. at 1; see Dkt. No. 5-6 ("Criminal Judgment") at 2-10.[2] The district court ordered the federal sentence to run "concurrently with the balance of the sentence that the defendant is currently serving in Lancaster County Court of Common Pleas Docket No. 2413-2009, on a charge of burglary and related charges." Crim. J. at 4. The district court also recommended to the Bureau of Prisons ("BOP") that "if appropriate, defendant receive credit for all time spent in federal detention and federal custody since September 8, 2011, as a result of the charges for which he is being sentenced herein." Id. at 5.

The BOP calculated Petitioner's sentence to begin on October 19, 2012, the date it was imposed, with a projected release date of August 21, 2020. Ray Decl. ¶ 10; Dkt. No. 5-8 ("Sentence Monitoring Computation Data"). On November 19, 2012, the United States Marshals Service returned Petitioner to Pennsylvania state custody to complete his state sentence and to begin serving his federal sentence. Ray Decl. ¶ 9; USM-129 Detention Rep. at 3. The federal judgment and commitment order was lodged as a detainer. Dkt. No. 5-7 ("Memorandum from Pennsylvania

---

[2] The cited page numbers refer to those generated by ECF.

Department of Corrections") at 2.

On June 5, 2013, Petitioner was paroled from Pennsylvania state custody into the custody of the United States Marshals Service to serve the remainder of his federal sentence. Ray Decl. ¶ 10; Sentence Monitoring Computation Data; PADOC Memo at 2.

On or about February 5, 2015, Petitioner filed an Administrative Remedy Request in which he asked the warden of his federal facility to direct the records department to send a letter to the district court asking for the court's position on awarding him prior custody credit from September 8, 2011, to October 19, 2012. Ex. D ("Administrative Remedy and Appeals") at 6. He argued that Section 5G1.3(b) of the Federal Sentencing Guidelines "supercede[d] Title 18 U.S.C. 3585(b)," and authorized "the sentencing judge to grant prior custody credit when the state offense was the basis for an increase in the Federal offense level." Id. He also claimed that the BOP sent letters to sentencing judges for other, similarly situated inmates. Id.

In a response dated April 15, 2015, Warden Langford denied Petitioner's request. Ex. A ("Request for Administrative Remedy Response") at 1-2.[3] Warden Langford explained that, based upon the section of Petitioner's May 1, 2012, pre-sentence report titled "Plea Agreement Information," the parties agreed that his federal sentence would "run concurrently to any prior undischarged term of imprisonment the [Petitioner] is currently serving in the Commonwealth of Pennsylvania, **pursuant to 5G1.3(c).**" Id. at 2 (quoting Pre-Sentence Report). Warden Langford concluded that "the intent of the Court was to follow sentencing Guidelines pursuant to 5G1.3C and not 5G1.3(b)." Id. Finally, Warden Langford advised Petitioner that "[w]e do not make requests to federal or state courts on behalf of inmates regarding the sentencing set forth by the court," and

---

[3] A copy of this document also appears at Dkt. No. 1-1 at 7-8.

3

doing so was "a function for [Petitioner's] attorney."  Id.

On April 17, 2015, Petitioner filed a Regional Administrative Remedy Appeal.  Ex. D at 9. He argued that the sentencing judge intended that Petitioner receive credit toward his federal sentence starting on September 8, 2011.  Id.  He again asked that his sentence computation reflect the appropriate prior custody credit, or that a letter be sent to the district court requesting clarification of its sentence.  Id.

On May 21, 2015, Petitioner's appeal was partially granted.  Id. at 10.  Regional Director J.L. Norwood forwarded Petitioner's request for further review to the "Designation and Sentence Computation Center (DSCC) for a final determination in regard to the extent the federal sentencing Judge intended to apply a 5G1.3 adjustment to [his] sentence for time in custody from September 8, 2011."  Id.  Norwood advised Petitioner to continue the administrative remedy process "in order to be advised of this determination."  Id.

Petitioner filed a Central Office Remedy Appeal on May 28, 2015.  Id. at 11.  On July 16, 2015, his appeal was denied.  Id. at 12-13.  National Inmate Appeals Administrator Ian Connors explained that on April 23, 2009, Petitioner was arrested by local law enforcement officers in Lancaster, Pennsylvania, for burglary and related charges.  Id. at 12.  He was sentenced on October 20, 2010, "to a 3-month and 5-year term of imprisonment."  Id.  Connors further explained that Petitioner was produced in federal court on September 8, 2011 pursuant to a writ of habeas corpus ad prosequendum, and was sentenced in federal court on October 19, 2012, to a 108-month sentence "to run concurrently with the balance of the sentence [he was] serving in Lancaster County."  Id. Petitioner was returned to state custody on November 21, 2012.  Id.

Connor stated that pursuant to 18 U.S.C. § 3585(a), "the earliest possible date a sentence can

4

begin to run is the date on which it is imposed." Id. The BOP "designated" Petitioner "to the Pennsylvania Department of Corrections (*nunc pro tunc*), allowing [his] federal sentence to commence on its date of imposition of October 19, 2012." Id. Connors explained that the time Petitioner spent in custody under the writ of habeas corpus ad prosequendum was not applicable to his federal sentence because he was simply borrowed from primary state custody under the writ, and that time was credited toward Petitioner's state sentence. Id.

This action followed. Petitioner argues that: (1) the sentencing court intended that he receive credit toward his federal sentence for all of the time he spent in federal detention from September 8, 2011, to October 19, 2012; and (2) the BOP must treat him the same as other similarly situated inmates in accordance with the intent of the sentencing court. Pet. at 6-7; Reply at 1.

## III.    DISCUSSION[4]

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. Poindexter v. Nash, 333 F.3d 372, 377 (2d Cir. 2003). Petitioner is challenging the BOP's calculation of his federal sentence, and his claims are properly brought pursuant to § 2241. Petitioner is not, however, entitled to relief.

Under 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.

---

[4] Respondent concedes that Petitioner's administrative remedies have been properly exhausted. Resp. at 2-3. The Court agrees.

1998). When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the federal sentence to run concurrently with, or consecutively to, the state sentence. 18 U.S.C. § 3584(a); Dutton v. U.S. Attorney Gen., 713 F. Supp. 2d 194, 199 (W.D.N.Y. 2010). If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished. 18 U.S.C. § 3584(a).[5] If the district court explicitly stated the federal sentence should run concurrently with the state sentence, the BOP will "designate the State correctional facility as the place for the defendant to serve his Federal sentence," and the federal sentence "will be deemed to commence upon imposition." Dutton, 713 F. Supp. 2d at 199 (citing 18 U.S.C. §§ 3585(a), 3621(b)).

In this case, Petitioner was in primary Pennsylvania state custody when his federal sentence was imposed, and the district court ordered his federal sentence to run concurrently with his Pennsylvania sentence. Crim. J. at 4. To effectuate that result, the BOP designated the Pennsylvania Department of Corrections facility where Petitioner was serving his state sentence as the place for him to also begin serving his federal sentence. The BOP's action resulted in: (1) Petitioner's federal sentence commencing on October 19, 2012, the date it was imposed; and (2) the federal and state sentences running concurrently in accordance with the district court's intent. 18 U.S.C. §§ 3584(a), 3621(b); Abdul-Malik v. Hawk-Sawyer, 403 F.3d 72, 76 (2d Cir. 2005); Dutton, 713 F. Supp. 2d at 199.

---

[5] An inmate in this situation may ask the BOP for a retroactive designation of the non-federal prison as the institution for service of the federal sentence. 18 U.S.C. § 3621(b). The BOP then considers the inmate's personal circumstances in relation to the factors set forth at 18 U.S.C. § 3621(b) to determine if a *nunc pro tunc* designation is consistent with the intent of the federal sentencing court or the criminal justice system.

The district court further recommended to the BOP that "*if appropriate*," Petitioner should "receive credit for all time spent in federal detention and federal custody since September 8, 2011, as a result of the charges for which he is being sentenced . . . ." Dkt. No. 5-6 at 5 (emphasis added). But the BOP properly declined to credit Petitioner's federal sentence from September 8, 2011, through October 19, 2012.

Under 18 U.S.C. § 3585(b), federal defendants may receive credit for time spent in official detention before the date the federal sentence commences if: (1) the detention was the result of the offense for which the federal sentence is ultimately imposed; or (2) the detention was the result of other charges for which the defendant was arrested after the commission of the offense for which the sentence was imposed, as long as that time has not been credited against another sentence. 18 U.S.C. § 3585(b)(1), (2); Dutton, 713 F. Supp. 2d at 199. Time that has been credited to a state sentence may not also be credited toward a federal sentence because § 3585(b) prohibits defendants from receiving "double credit for [their] detention time." United States v. Wilson, 503 U.S. 329, 337 (1992); see Lopez v. Terrell, 654 F.3d 176, 184-85 (2d Cir. 2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence); Jennings v. Schult, No. 08-CV-0976, 2009 WL 838112, at *4 (N.D.N.Y. Mar. 27, 2009) ("[T]he Court notes that Congress made clear in 18 U.S.C. § 3585(b) that a federal defendant should not receive double credit for detention time by limiting credit for the time served prior to the date a sentence commences to time that has not been credited against another sentence."), aff'd 377 F. App'x 97 (2d Cir. 2010).

The time from September 8, 2011, to October 19, 2012, was credited to Petitioner's Pennsylvania state sentence and, as a result, he is unable to receive additional credit toward his

7

federal sentence for that period because § 3585(b) precludes him from receiving "double credit." Wilson, 503 U.S. at 337; Werber, 149 F.3d at 173.

The fact that federal authorities briefly assumed custody over Petitioner from September 8, 2011, to October 12, 2012, pursuant to a writ of habeas corpus ad prosequendum does not change that result. When a state prisoner is transferred into federal custody pursuant to this writ, the state retains primary custody over him or her because the prisoner is "on loan" to federal authorities. Hines v. Schult, No. 08-CV-0451, 2009 WL 384043, at *3 (N.D.N.Y. Feb. 10, 2009); see also United States v. Fermin, 252 F.3d 102, 108 n.10 (2d Cir. 2001) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum."). The writ simply "enables a jurisdiction to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence" the prisoner. Greenough v. Hufford, No. 12-CV-8836, 2013 WL 4534997, at *8 (S.D.N.Y. Aug. 27, 2013) (internal quotation marks and citation omitted). Time in custody pursuant to the writ "does not count toward a federal sentence because the time is credited toward the state sentence." Ortiz v. Lara, No. 11-CV-2092, 2013 WL 6083409 at *2 (S.D.N.Y. Nov. 19, 2013) (citing 18 U.S.C. § 3585(b)). When the federal prosecution is complete, "principles of comity require the return of the defendant to the primary custodian . . . ." Dutton, 713 F. Supp. 2d at 201.

Pennsylvania did not relinquish primary jurisdiction over Petitioner until he was paroled to federal custody on June 5, 2013. Ray Decl. ¶ 10; Sentence Monitoring Computation Data. Petitioner thus remained in primary state custody during the time he was borrowed from Pennsylvania on the writ of habeas corpus ad prosequendum. Petitioner was properly returned to Pennsylvania authorities once his federal prosecution was complete, where he continued serving his

state sentence and began serving his federal sentence.  Dutton, 713 F. Supp. 2d at 201; see also

Ortiz, 2013 WL 6083409, at *2 ("Generally, producing a state prisoner under a writ of habeas

corpus ad prosequendum to answer federal charges does not relinquish state custody.").  Based on

the record, the BOP properly concluded that it was improper to credit the time from September 8,

2011, to October 19, 2012, to Petitioner's federal sentence.

Finally, Petitioner claims that the BOP must treat him the same as "similar situated inmates

whose sentences were administered in accordance with the intent of the sentencing court."  Pet. at 7.

Specifically, he complains that the BOP refused to "seek the intent of the sentencing court with

respect to a time-credit from Sept. 8, 2011," but the BOP sent a similar letter on behalf of another

inmate, Benjamin Harrison.  Id.  This argument is without merit.

Petitioner and Harrison were each in primary state custody when their federal sentences were

imposed, but the similarity ends there.  See Ex. C ("Letter from BOP to Judge Berman") at 4.

Unlike the present case, the district court in Harrison "was silent regarding any relationship" with

the state prosecution.  See id.  Therefore, when Harrison satisfied his state court sentence and was

released to a federal detainer to commence serving his federal sentence pursuant to 18 U.S.C.

§ 3585(a), he asked that his federal sentence be served concurrently with the state sentence, "which

would be accomplished by the Bureau of Prisons" retroactively "designating the state institution for

service of his federal sentence," reducing the total amount of time spent in custody.  Id. at 4-5; see

also 18 U.S.C. § 3621(b).  The BOP wrote to the sentencing judge for his input on Harrison's

request, stating that if the court indicated the federal sentence should run concurrently with the state

sentence, the BOP would "commence the sentence" on the federal conviction "on the date of

imposition."  Ex. C at 5.  The letter indicates that the sentencing court granted Harrison

9

"[r]etroactive designation." Id.

The record is thus clear that the reason the BOP sought the federal sentencing judge's input in Harrison's case is because the sentencing commitment was silent regarding whether the federal and state sentences should run concurrently. But in this case, the district court's intent that Petitioner's federal sentence should run concurrently with his Pennsylvania sentence was clear, and there was no need to seek further input from the district court. The BOP properly calculated Petitioner's sentence to begin running on the date it was imposed, rather than upon the date he was received into custody by federal authorities, and designated his state institution as the place of service for his federal sentence from the outset. 18 U.S.C. §§ 3585(a), 3621(b)). The BOP's actions resulted in Petitioner's sentences running concurrently, as the district court intended. As discussed above, although the district court recommended that "if appropriate," Petitioner should receive credit for the time spent in "federal detention and federal custody since September 8, 2011," Crim. J. at 5, the BOP properly declined to do so because that time period was credited to Petitioner's state sentence.

In sum, the record shows that the BOP properly calculated Petitioner's sentence, and his Petition is therefore denied and dismissed.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) for a writ of habeas corpus is **DENIED and DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: May 05, 2016
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge